JOSHUA MERRILL & others *vs.* SAMUEL McINTIRE.

The incorporation, pursuant to *St.* 1854, *c.* 454, of an unincorporated loan fund associa-
tion, does not affect the right of its trustees to maintain an action on a bond previously
given to them.

A bond to the trustees of an unincorporated loan fund association, (the articles of which
provide for the termination of the association so soon as its funds shall attain a certain
amount,) for the payment of a certain sum monthly so long as the association shall exist,
is not void for uncertainty.

A bond to the trustees of an unincorporated loan fund association, (the articles of which
provide that it shall terminate as soon as its funds shall be sufficient to pay five hundred
dollars to each member to whom no advance shall have been made,) by a member who,
offering the highest premium, has obtained an advance of five hundred dollars, deduct-
ing that premium — to secure the payment, monthly, during the existence of the associa-
tion, of a sum equal to his monthly due of two dollars, and interest at the rate of six
per cent. a year on the whole amount advanced, is not usurious.

After a verdict and judgment for the penal sum, in an action for breach of the condition
of a bond, the defendant, upon a hearing to ascertain the amount due and payable in
equity and good conscience, pursuant to the Rev. Sts. *c.* 100, § 9, may prove any pay-
ments on the bond, although not set up in his answer to the declaration.

ACTION OF CONTRACT, commenced on the 2d of October 1856,
upon a bond, dated April 25th 1854, made by the defendant to
the plaintiffs as trustees of the Merrimac Mutual Loan Fund
Association in Lowell, in the penal sum of $1,650, "to be paid
unto the said association, its successors and assigns," upon this
condition :

" The condition of this obligation is such, that if the above
bounden obligor, his heirs, executors or administrators, shall pay
or cause to be paid to the above mentioned obligors, their suc-
cessors or assigns, the sum of twenty eight and $\frac{25}{100}$ dollars per
month, on the fourth Monday of each and every month, as long
as the association of which the said obligor is a member shall
continue ; and also all fines which shall be charged to the said
obligor, pursuant to the articles of said association, during said
period ; and shall also keep or cause to be kept all his other
covenants, promises and agreements entered into by him as a
member of said association and subscriber for the shares thereof,
according to the true intent and meaning of said articles, then
this obligation shall be void ; otherwise it shall remain in full
force and virtue."

The declaration averred that the defendant had not paid the sum of $28.25 per month, nor the fines charged to him, nor kept his other covenants, promises or agreements, according to his bond and the articles of association.

Answer, that the bond was void, because there was not such an association as was named therein, having a legal existence as such, so as to make such a contract; because the conditions of the bond were uncertain; because the bond was usurious, unconscionable and against law, in fact, as well as upon its face; and because, if there ever was such an association, it had ceased to exist before the commencement of this action, and the plaintiffs had no authority to institute this action.

At the trial in the court of common pleas in Middlesex at March term 1858, before *Perkins*, J., the plaintiff put in the bond, and rested his case. 'The defendant introduced no evidence, and admitted that the association was in existence when the bond was given, under articles, parts of which are copied in the margin;* but contended that the bond was void

---

* We, the undersigned, having associated and formed a company for the purpose of accumulating a fund for the purchase of real estate, making improvements thereon, and removing incumbrances therefrom, and for any other legal use, and for the further purpose of accumulating a fund to be returned to its members who do not obtain advances as above mentioned, when the funds of the association shall amount to five hundred dollars per share, do severally agree that the following articles shall govern us, and determine our rights, duties and priv.·leges, as members of such association. The number of shares shall not exceed fifteen hundred.

Art. II. *Members.* The members of this association shall be those who shall sign the articles of association, pay the entrance fee, and shall hold one or more shares.

Art. III. *Officers, and how chosen.* The officers of this association shall be a president, vice-president, twelve directors, secretary, and surveyor. The election of officers, after the first year, shall be by ballot, and shall take place annually, except the secretary and surveyor, who shall be elected permanently, and continue in office, unless removed as hereinafter provided. All officers must be members of the association.

Art. IV. *Board of Directors, and their Duties.* The board of directors shall have the general supervision, direction and management of the affairs of the association, and the duties of its officers. They shall elect from their number

upon its face, for uncertainty, and because it was usurious; and that the association had ceased to exist, by accepting on

three trustees of this association, who shall, as such trustees, be vested with all property, bonds, mortgages and other legal instruments belonging to the association, in such form as the directors shall approve of.

ART VIII. *Surveyor, and his Duties.* It shall be the duty of the surveyor of this association to personally examine all property offered as security for advances to be made by the association, immediately upon the purchaser furnishing him with the location and description of his property. He shall thereupon, and without delay, report to the board of directors a full and minute description of such premises as he has examined, together with the value thereof, and his opinion thereon, which statement and opinion shall be in writing, and shall be filed with the papers connected with such property. The board of directors, if they are satisfied with such statement and the value of the premises, shall proceed to pass upon the same, provided they are satisfied with the title.

ART. IX. *Monthly Dues, and Fines for Nonpayment.* Every member of this association shall, during the week next preceding every regular meeting after the organization of this association, and during its continuance, pay two dollars as monthly dues for each share held by him, and, for any neglect in so doing, shall be fined for every nonpayment on each share as follows: For the first month, twelve and a half cents; second month, twenty five cents; third month, thirty seven and a half cents; fourth month, fifty cents; and every succeeding month, one dollar. All shares, on which no payment has been made for six months, shall be forfeited. All payments by a member shall be applied to the oldest charge against him on the books. No payment of monthly dues or fines shall be received from any member, except for the whole amount of such dues and fines due by such member at the time of tendering such payment, except allowed by the board of directors. Members, paying their monthly dues three months or more in advance, shall be entitled to interest at the rate of six per cent. per annum.

ART. X. *Entrance Fee.* Every member of this association shall pay an entrance fee of one dollar per share, until the conclusion of the third regular meeting of the association, after which time new members shall pay such increased entrance fee and the monthly dues from the commencement of the association, as the board of directors shall judge sufficient to place the new member upon the same footing as the original shares. All shares on which an entrance fee only has been paid shall become forfeited in two months after they shall have been subscribed for. The arrears for new shares shall be paid in full, or in such instalments and under such penalties as the board of directors shall determine.

ART. XIII. *Purchase of Shares.* As soon, and as often thereafter, as the funds of the association shall amount to the sum of five hundred dollars, (one share,) the same shall be put up to competition among the members, by the presi

the 25th of January 1855 the *St.* of 1854, *c.* 454, and thereby
making themselves a corporation, and thus changing the terms

---

dent, at a regular meeting of the association, and the member offering the highest
premium for the same shall be entitled to it, for the purpose of building or pur-
chasing freehold or leasehold premises, or removing incumbrances therefrom, or
any other legal use; and he shall secure the payment of his subscriptions, interest,
fines, &c., by a mortgage to the association, upon real estate, satisfactory to the
directors. In case a member is desirous of procuring more than one share, he
shall have the privilege (after having offered the highest premium for one) of
receiving fourteen more shares, at the same amount of premium, out of the next
moneys to be received, provided he subscribes and pays the value of such addi-
tional shares as have not already been subscribed and paid for, and at the time
of purchase pays the sum of one dollar on each share purchased; which, in addi-
tion to the interest hereinafter mentioned, shall be forfeited, in case the member
should refuse or neglect to receive said share or shares. But no member shall
purchase more than fifteen shares. The purchaser of any shares shall pay an
interest, from the time of purchase, of six per cent. per annum, payable monthly,
as a redemption fee; and in case the member so purchasing shall fail to comply
with the terms of purchase, he shall be charged with the interest for the time the
association may be deprived of the same through his neglect. Members may
purchase fractional parts of a share, not less than one fourth, provided they shall
subscribe for and pay the dues on the whole share. The member so purchasing
shall, within one week after becoming the purchaser of such share or shares, ten
der to the secretary, to be submitted for the approval of the proper officers, a
written statement of the location, description and value of the property which he
proposes as security for the property to be advanced by the association. If the
officers are satisfied with the sufficiency of the value of the security thus offered,
the association shall advance the amount to the member, when the directors of
the association shall be satisfied with the title thereto, and upon the execution of
proper instruments. In case the member should build, the money shall be ad-
vanced in sums necessary for the prosecution of the building until its completion,
the association executing an agreement to that effect at its own expense. In such
case, the member shall present a written certificate from the builder engaged in
the erection of the building, certified by the surveyor of the association, of the
sum necessary for such purpose. But no money shall be advanced for the pur-
pose of building, unless the board of directors are satisfied that it is safe and
proper so to do, and a bond and mortgage, under the direction of the board, shall
have been executed and delivered by the member to the association.

ART. XIV. *Mortgaged Premises to be kept Insured, free from Taxes, &c.*
All property mortgaged to this association shall be kept fully insured against fire,
in some good office to be approved of by the board of directors, and the policy
to be assigned to the association, except when such assignment shall be impracti-

Merrill & others *v.* McIntire.

of the contract declared upon. But the court ruled that the bond was not void upon its face, for any of the reasons stated;

cable, and the directors deem the security sufficient without it; the premiums to be paid by the association and charged to the member mortgaging the same, who shall repay the amount of such premium at the time his next subscription to the association falls due. He shall also keep the property free and clear from all arrears of ground rent, taxes, water rent, and assessments. In case default be made in payment, the secretary shall pay the same immediately out of the funds of the association, and charge the same to the member, who shall be fined, at the discretion of the board of directors, in any amount not exceeding one dollar for each default, and the mortgaged premises shall be subject to all such charges and fines.

ART. XVII. *Redemption of Mortgaged Premises.* When any mortgagor to this association shall desire to redeem his premises from the mortgage upon them, he shall give seven days' notice to the secretary before the next meeting of the board of directors. The secretary shall lay the matter before them, and they shall decide the amount to be paid by the mortgagor. In case the sum is agreed to by the mortgagor, he shall pay the said amount, and receive a discharge of release of the mortgaged premises, and all the papers and documents connected therewith, and be clear from all further payment to the association in regard of such share or shares with which he built or purchased the said premises.

ART. XXII. *Investment of Surplus Funds.* All funds of the association, beyond what shall be required for advances to members, shall be invested upon bond and mortgage, and shall be recommended and approved by the board of directors.

ART. XXIII. *General Fund.* All fines, monthly dues, fees, bonds, premiums and interest, received by the association, shall be considered as assets thereof, and applied to the general fund; and all moneys received by the association shall be bankable.

ART. XXVI. *Votes.* On all votes taken at any meeting of the association, each member shall be entitled to one vote, who shall not be in arrears two months; and in all elections or ballots, the roll of members shall be called, and the secretary shall ascertain whether members voting are in arrears.

ART. XXX. *Termination of the Association.* Whenever it shall appear by the books of the association that there is sufficient money on hand and due the association to pay on each unpurchased share, to the holder thereof, the sum of five hundred dollars, over and above all debts and liabilities of the association, all arrears of monthly dues, fines and otherwise, shall become payable at once. The board of directors shall then pay, satisfy and discharge, first, all debts and liabilities of the association, and then pay over, to the owner of such unpurchased share, an equal dividend of all sums on hand, and which shall afterwards be received, until the whole shall be divided; and, from the time of the commence-

**14 \***

and that the acceptance of the act of 1854, if proved, would not defeat the plaintiff's right to recover upon the bond.

The defendant then submitted to a verdict for the amount of the penalty of the bond, and proposed to go to the jury to determine the amount due under the bond, and offered to prove that, since the execution of the bond, the association had become a corporation as above stated, and also that he had made sundry payments thereon. But the court rejected the evidence, and ruled that evidence of payments was inadmissible, because that defence was not alleged in the defendant's answer.

The jury found that the amount actually due, in equity and good conscience, upon the bond, was $1,454. The defendant alleged exceptions, which were argued at Boston in February 1859.

*R. B. Caverly*, for the defendant. 1. By accepting the act of 1854, the association, as such, ceased to exist. The defendant should have been permitted to prove this fact, if not in bar of the suit, at least as bearing upon the question of the amount of damages.

2. The bond in suit is void for uncertainty. By the terms of the bond, and of the mortgage given to secure it, the defendant may be held to keep paying forever; for the association may be continued through all time. It is not in the power of the defendant to obtain a discharge of either; nor is the amount to be paid capable of computation. Chit. Con. (8th Amer ed.) 53, 54. *Hinds* v. *Chamberlin*, 6 N. H. 227.

3. The bond is void, because its conditions are against law. It violates the law against usury. Chit. Con. 586, 597, 603 Story on Notes, § 189. It violates the law of mortgages; for the defendant can never redeem, except upon a contingency, or by

ment of the payment of such dividends, no further monthly dues or premiums shall be payable, except that all arrears shall be fully paid up ; and the trustees shall deliver to each mortgagor, who has complied with the conditions of his mortgage, a discharge, and all papers connected therewith. After the performance of the foregoing duties, this association will cease to exist. This article shall not be altered, amended or repealed, without a vote of two thirds of those who have not purchased their shares, or any part thereof.

the plaintiffs' consent. Arts. 13, 17, *ante,* 160, 161, *note.* The bond is, upon its face, unconscionable, and beyond the power of the association to require. Story on Bailments, §§ 318, 345 Chit. Con. 616. *Josephs* v. *Pebrer,* 3 B. & C. 639.

4. The defendant, after submitting to a verdict for the amount of the penalty of the bond, had the right to claim an assessment of damages by the jury, and to prove any payments which he had made, as tending in equity to limit the amount for which execution should issue. In such a case, no specific answer is required by law. Rev. Sts. *c.* 100, §§ 8, 9. *St.* 1852, *c.* 312, §§ 14–18. *Waldo* v. *Fobes,* 1 Mass. 10. *Sevey* v. *Blacklin,* 2 Mass. 542. *Bryson* v. *Ker,* 4 S. & R. 308.

*B. F. Butler & W. P. Webster,* for the plaintiffs.

MERRICK, J. It was agreed by the parties at the trial that the Merrimac Mutual Loan and Fund Association, of which the plaintiffs are the alleged trustees, originally consisted of proprietors united with each other under written articles, copies of which were furnished to the court at the argument, and that they subsequently became incorporated under the provisions of the *St.* of 1854, *c.* 454. After the plaintiffs had proved and put into the case the bond declared on, the defendants contended that it was void upon its face for uncertainty, and also because it was made upon a usurious consideration, and because, the association having ceased to exist, there was no longer any party in existence competent to prosecute the suit. These objections were all overruled by the court.

1. The ruling in relation to each of these particulars was correct. The object and purpose of the statute, in authorizing voluntary associations to organize themselves into bodies corporate, were not to dissolve or destroy, but to afford them increased facilities in the transaction of their business, and to secure the durability essential to the accomplishment of the end for which they were designed. In availing themselves of the provisions of the statute, the associates therefore lost none of the rights which they had previously acquired. The choses in action which belonged, and the debts which were due to them, were, in legal effect, and by operation of law, transferred and assigned to the

corporation, and were to be enforced and collected for the mutual benefit of the associates in the new relation to each other which they assumed. The assignment of a chose in action is a complete transfer of the contract to the assignee, and entitles him to all the benefits and advantages to be derived from it; but does not confer upon him the right to enforce the performance of it by any legal proceeding in his own name. But, as a legal and necessary result of the assignment, he may institute and pursue suitable and appropriate suits in the name of the assignor, who cannot, by any act whatever, deprive him of its use for that purpose. An action may therefore well be maintained upon the bond declared on, in the name of the assignors, for the recovery of the money for which the defendants still remain indebted. *Brigham* v. *Clark*, 20 Pick. 43. *Jones* v. *Witter*, 13 Mass. 304.

2. There is no ground for affirming that there is apparent upon the face of the bond any such uncertainty in its terms as would render the performance of its condition impracticable, or as would even make it difficult for the obligor to ascertain the extent and limit of his responsibility and the means of obtaining his discharge. It provides for the monthly payment of a specified sum of money during the continuance of the association. The only uncertainty, which is apparent upon a perusal of the terms of the bond, is in relation to the period of time, during which the association is to continue in existence, and the monthly payments are to be made. But these are facts which may be determined upon a resort to extrinsic evidence. If it should be objected that no such evidence could be found, or, if found, would be indefinite and unsatisfactory, the answer is, that if in such a contingency the parties should be left in entire uncertainty in relation to their respective rights and obligations, this difficulty does not arise upon the face of the bond, but upon the imperfection of the proofs resorted to for explanation.

But without relying upon this answer, it is sufficient that, upon referring to the articles which constitute the written agreement between the parties, provision is made for the termination of the association; art. 30. That end may be reached at an ear-

lier or later day, as the business to be transacted shall be more or less profitable and successful. But though subject to contingencies which may perhaps create embarrassments and disappointment, still the termination of the association and the winding up of its affairs are distinctly provided for; and when those take place, the condition of the bond will be performed, and no further payments under it can be required.

The same articles also contain other provisions which may be resorted to by the obligor for relief against the supposed uncertainty upon which his objection is founded. They provide that all loans shall be secured by mortgage of real estate; art 13; and that estates mortgaged as security for the payment of a debt, or, as in this case, for the performance of the condition of a bond, may be redeemed; art. 17. Redemption of a mortgage is a payment of the debt for which it stands as collateral security. If the debtor shall not be satisfied with the claim which the officers of the association may decide to be due, he is not concluded by their determination; but may appeal to the proper legal tribunals to adjust the matters in controversy between them. On a bill in equity, if there were occasion to resort to it, the rights of the respective parties might be investigated, and such decree entered as would secure to each whatever they were respectively entitled to require.

3. If it distinctly appeared, upon examination of the bond, that it was executed upon and for a usurious obligation, it would not follow that therefore it should be declared void. That is not the legal effect which follows upon the taking or reserving of a greater rate of interest than is allowed by law. The contract is valid, and still remains in force, although the securing or attempting to secure an unlawful compensation for the use of money loaned may subject the lender to the loss and penalties prescribed by the statute. Rev. Sts. *c.* 35, § 2. *St.* 1846, *c.* 199. The defendant's objection therefore, that the bond was void for usury upon its face, was very properly overruled.

But in truth, in looking at the actual transaction between the parties, the loan to the defendant does not appear to have been made upon any usurious consideration. The monthly payment

which he stipulated to pay as long as the association should continue to exist was not simply for the use of the money, or forbearance of repayment of the principal, but for the privilege accorded to him of becoming an owner of a certain number of shares, and of eventually taking the dividend to which, by the articles of agreement, he would, upon the winding up of the affairs and general settlement of the concerns of the association, be entitled. Whether the arrangement made was one which would be likely to result advantageously was a question upon which he was to exercise his own judgment. All the associates had the same right. Each one would determine for himself what was the value of the prospective benefit to be enjoyed, and would make his offer for the money to be loaned, according to his estimate of the worth of the shares which he was allowed to take and of which he became an owner. He could not have more than fifteen shares in the whole; nor become a borrower of the association except in the proportion of his own to the whole of its stock; art. 13. Upon the close of the whole concern, all the owners of shares were to have their just and equal proportions of the profits acquired. Whether the advantages anticipated will finally be obtained may perhaps be questionable; but since the borrower, under such circumstances, is to have his full proportion of the benefit of all the gain which may be made, he cannot assert that he has contracted to pay, or that the lender has reserved to himself, a usurious rate of interest.

4. After these questions had been severally disposed of by correct rulings of the court in relation to them, and a verdict under its direction had been taken for the plaintiffs for the penalty of the bond, the defendant proposed to go to the jury, that they might determine the amount due on the bond, and offered to prove that since its execution he had made sundry payments upon it. This, upon the objection of the plaintiffs, he was not allowed to do, for the reason that he had set up no such matters in his answer.

In this particular, we think the ruling of the presiding judge was erroneous. In actions brought for breach of the condition of a bond, when it is found, by verdict or otherwise, that there

has been a breach of it, judgment is to be entered in the common form for the whole penalty; but execution is to issue only for the sum which is then due and payable in equity and good conscience. This sum is to be ascertained by a jury, if either party shall think proper to have the question so decided. Rev. Sts. *c.* 100, §§ 8, 9. That was the claim which was preferred by the defendant, and it should have been allowed. The provisions of the practice act, in reference to the filing of answers to the declaration, were not applicable to this question, nor to this action in the stage of it when the question arose. *St.* 1852, *c.* 312, §§ 12, 18. The defendant had attempted to interpose a defence upon his answer, duly filed in pursuance of the requirements of the statute, and had failed. A verdict was rendered and judgment entered against him. He then sought to have the sum for which execution should issue ascertained by the jury. He had a right to insist upon this, and therefore the evidence of payments upon the bond which he offered to produce should have been received. Its exclusion was just ground of exception.

The conclusion is, that judgment is to be entered on the verdict for the penalty of the bond. All the exceptions other than those in relation to the damages are overruled. In relation to the damages the exceptions are sustained, and the verdict to that extent is set aside, and a new trial is granted as to the amount of damages, that is, as to the sum actually due on the bond, but upon no other question.